UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------
ALEXANDRA PULLMAN, JACLYN KNANISHU,
ARIANNA MILANESE, individually and on behalf of all
other persons similarly situated who were employed by
DEFENDANTS,

                                        Civil Action No: 7:24-cv-01383

                 PLAINTIFFS,

           -AGAINST-                            **COMPLAINT WITH**
                                              **JURY TRIAL DEMAND**

DANA COLLINS and KEVIN COLLINS, individually and
in their representative capacities, and TWEEGS, INC. d/b/a
MELZINGAH TAP HOUSE
and ROONIES, INC. d/b/a PUBLICK HOUSE 23, and all related
entities, successors, and assigns,

               DEFENDANTS.
------------------------------------------------------------------------

      Named Plaintiffs, ALEXANDRA PULLMAN ("PULLMAN"), JACLYN KNANISHU

("KNANISHU"), and ARIANNA MILANESE ("MILANESE") ("Named Plaintiffs"), by their

attorneys, Youngwirth Law PLLC as and for their Complaint against Defendants DANA

COLLINS  ("D. COLLINS") and KEVIN COLLINS  ("K. COLLINS"), individually and in their

representative capacities, TWEEGS, INC. d/b/a MELZINGAH TAP HOUSE ("TWEEGS") and

ROONIES, INC. d/b/a PUBLICK HOUSE 23 ("ROONIES"), and all related entities (collectively

referred to as "Defendants"), alleges upon knowledge as to themselves,  and upon information and

belief, as to all similarly situated persons ("Putative class," "Plaintiffs," "the Class," or "Class

Members") as follows:

PRELIMINARY STATEMENT

     1.       This lawsuit seeks to recover minimum wages, overtime compensation,

misappropriated tips, wages, and other damages for Plaintiffs and their similarly situated co-

workers -servers, bussers, food runners, barbacks, bartenders, and other similarly situated non-managerial front-of-house employees (collectively, "Plaintiffs and Named Collective") - who work or have worked for Defendants within the last six (6) years.

## THE PARTIES

2.     Named Plaintiffs are individuals who reside in Dutchess County in New York State and were employed by Defendants.

3.     Named Plaintiff PULLMAN was employed by Defendants and was a bartender and server from approximately 2014 through March 2022. She worked mainly at Publick House in 2022, but worked primarily at Melzingah until 2018.

4.     Named Plaintiff KNANISHU was employed by Defendants and worked at Publick House and Melzingah from approximately Sept 2016 through July 2021 as a server and bartender.

5.     Named Plaintiff MILANESE was employed by Defendants as a server and bartender at Publick House from January 2013 to January 15, 2022.

6.     Named Plaintiffs and all other similarly situated persons ("Putative class," "Plaintiffs," "the Class," or "Class Members") qualify as "employees" as that term is defined under New York State and Federal Law.

7.     ROONIES is a domestic business corporation organized and existing pursuant to the laws of the State of New York and is authorized to conduct business within the State of New York.

8.     Upon information and belief, ROONIES maintains a restaurant and bar at 5 Maggiacomo Ln, Pleasant Valley, NY 12569.

9.     TWEEGS is a domestic business corporation organized and existing pursuant to the laws of the State of New York and is authorized to conduct business within the State of New York.

10.     Upon information and belief, TWEEGS maintains a bar and restaurant at 554 Main St, Beacon, NY 12508.

11.     Defendant D. COLLINS is a resident of the State of New York.  At all relevant times, Defendant D. COLLINS is the owner and managing member of ROONIES, INC. d/b/a PUBLICK HOUSE 23 and TWEEGS and employed with same in a supervisory capacity with management authority over Named Plaintiffs, including the authority to modify the terms and conditions of the Named Plaintiff's employment, as well as control and modify ROONIES' and TWEEGS's pay practices, including, but not limited to the amount paid to Named Plaintiffs.

12.     Defendant K. COLLINS is a resident of the State of New York. At all relevant times, Defendant K. COLLINS is the part-owner and member of ROONIES HOUSE 23 and TWEEGS and employed with same in a supervisory capacity with management authority over Named Plaintiffs, including the authority to modify the terms and conditions of the Named Plaintiff's employment, as well as control and modify ROONIES' and TWEEG's pay practices, including, but not limited to the amount paid to Named Plaintiffs.

13.     While separate restaurants, both ROONIES and TWEEGS operate as a joint employer and/or joint enterprise or venture as the entities would share staffing and resources. For example, Plaintiffs would be employed as a server by ROONIES, but would be dispatched to work at TWEEGS for a catered party. Moreover, upon information and belief, they employed the same policies and procedures, as well as the same accountant and payroll software.

14.     At all times pertinent hereto, the Defendants were the joint "employers" of Plaintiffs within the meaning and intent of New York and Federal Law. Upon information and belief, Defendants employ over thirty (30) employees.

15.     Prior to filing the instant litigation, for a period of time, the parties entered into a tolling agreement with respect to a portion of the claims at issue.

JURISDICTION AND VENUE

16.     Defendants are subject to personal jurisdiction in New York because ROONIES' principal office is located at 25 NY-376, Hopewell Junction, NY 12533, it transacts business within the State, and is a corporation which is licensed in New York State.  Furthermore, a substantial part of the events or omissions of Defendants, which give rise to the claims herein, occurred in New York State. Moreover, TWEEGS's principal office is located at 554 Main St, Beacon, NY 12508.

17.     Moreover, upon information and belief, Defendants K. COLLINS and D. COLLINS reside in Dutchess County.

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

19.     This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

20.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

BASIS FOR CLASS AND COLLECTIVE ACTION

21.     This action is properly maintainable as a class action pursuant to Article 9 of the New York Civil Practice Law and Rules and a collective action pursuant to FLSA, 29 U.S.C.S. § 216(b), which provides that an action under the FLSA may be maintained against any employer in any federal or state court of competent jurisdiction.

22.    This action is brought on behalf of the Named Plaintiffs and a class consisting of each and every person employed as bartenders and servers, or in similar capacities by Defendants since 2019.

23.    The putative class is so numerous that joinder of all members is impracticable.

24.    The size of the putative class is believed to be in excess of 50 individuals. In addition, not all of the names of all potential members of the putative class are known.

25.    The questions of law and fact common to the putative class predominate over any questions affecting only individual members.

26.    The claims of the Named Plaintiffs are typical of the claims of the putative class.

27.    The Named Plaintiffs and their counsel will fairly and adequately protect the interests of the putative class. Counsel for Named Plaintiffs has substantial experience handling complex wage and hour class actions.

28.    A class action and/or collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

29.    During Plaintiffs' employment, Defendants applied a tip credit to Plaintiffs and Named Collective's wages and paid them a reduced minimum wage rate. Defendants, however, did not satisfy the requirements under the New York Labor Law ("NYLL") or the Fair Labor Standards Act ("FLSA") by which it could take a tip credit towards the hourly rates paid to Plaintiffs and Named Collective.

30.    Defendants also required Plaintiffs and Named Collective to perform non-tip producing side work, including, but not limited to, general cleaning of the restaurant, cooking of meals in the restaurant, training employees, stocking and cleaning service areas, folding

5

napkins, polishing and restocking silverware and glassware, for more than 2 hours and/or 20% of their shifts.

31.     Throughout Plaintiffs' employment, Defendants also maintained a policy and practice whereby Plaintiffs and Named Collective were not paid the appropriate premium overtime pay for hours worked in excess of 40 per workweek in willful violation of New York State and Federal Law. Throughout Plaintiffs' employment, Defendant applied a tip credit to Plaintiffs and Named Collectives' wages and paid them a reduced minimum wage rate. Defendant, however, did not satisfy the requirements under the New York Labor Law ("NYLL") or the Fair Labor Standards Act ("FLSA") by which they could take a tip credit towards the hourly rates paid to Tipped Employees. In that regard, Defendants failed to provide Plaintiffs and Named Collective with notification of the tipped minimum wage rate or tip credit provisions of the NYLL or the FLSA, or of their intent to apply a tip credit to Plaintiffs and Named Collective's wages. As a result, Defendants are liable to Plaintiffs and Named Collective for the difference between the full minimum wage rate and the tipped minimum wage rate paid for all hours worked up to 40 each work week.

32.     Named Plaintiffs, for themselves and on behalf of the putative collective class, also bring this action, pursuant to New York Labor Law ("NYLL") Article 19 § 663; NYLL Article 6 §§ 190, et seq.; and 12 New York Codes, Rules, and Regulations ("NYCRR") § 142-2.2, to recover earned, but unpaid straight time and overtime compensation.

33.     By the conduct described in this Complaint, Defendants have violated the Fair Labor Standards Act ("FLSA"), as well as the New York Labor Laws, including New York State wage and hour laws, set forth herein by failing to pay its employees, including Plaintiffs, overtime wages, spread-of-hours pay and noticed wages, for failing to provide lunch breaks, and

for failing to maintain and provide accurate wage and pay records including, but not limited to, paystubs and W-2s. The Defendants, upon information and belief, altered, and also failed to release Plaintiffs' wage records when requested, as well as failed to provide sexual harassment training in contravention of New York State law during the course of employment of the Named Plaintiffs.

34.    At all times relevant, Defendants' unlawful policy and pattern or practices have been willful as described further herein.

35.    Moreover, NYLL § 196-d prohibits employers or their agents from demanding or accepting directly or indirectly any part of the gratuities received by an employee, or retaining any part of a gratuity or any charge purported to be a gratuity for an employee. Defendants unlawfully retained tips from Plaintiffs and unlawfully redistributed their tips to themselves.

36.    When the servers entered their tips in the computer system at the end of the day, the system notified them about their insufficient wages, but Defendants then either overrode the computer system's notification to the employee or required the employee to enter inaccurate tip amounts that were later reflected on inaccurate pay stubs.

37.    Upon information and belief, when distributing the mandated fee to hosts, hostesses and bartenders, the managers paid these employees whatever tip share they felt like paying on that particular day, handing the tip share to each employee, or telling them to leave a portion in the register. They also paid employees frequently "off the books" and did not provide them with required W-2s.

38.    Upon information and belief, at all relevant times Defendants improperly withheld portions of Plaintiffs' wages, fraudulently stating that the deductions were made for the

purposes of tax withholdings, when in reality, Defendants kept these deductions for themselves and/or to avoid paying overtime in a given week.

39.    Upon information and belief, Plaintiff and the Collective Class Members were not paid at least the New York minimum wage for each hour worked, even if their tips did not exceed the Federal and New York minimum wages.

40.    With regard to Plaintiffs' and the Class members, Defendants failed to pay them proper wages because Defendants were not entitled to claim any tip credit as Defendants failed to meet the statutory requirements under the New York Labor Law.  Plaintiff and Class Members suffered from Defendants' failure to pay proper wages due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed a tip credit in excess of the statutory amount permissible for overtime hours, (iii) claimed a tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

41.    As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid tips, reasonable attorneys' fees, liquidated damages, and pre-judgment interest and post-judgment interest.

42.    It is clear that the Defendants' violation of the FLSA was willful as demonstrated by text messages from Defendant Collins to Plaintiff.

43.    Defendants actually knew of the specific FLSA requirements to pay overtime, as well as spread of hours pay, and tip credits at issue at the time of the violation and intentionally did not comply with them.

44.    The Defendants' willfulness is demonstrated as follows:

The Named Plaintiffs had numerous conversations with the Defendants regarding the New York State labor and Federal Law Labor regulations, their violations of same, and Defendants disregarded those discussions and continued to violate the law.

For example, the Named Plaintiffs had in person and telephone conversations with the Defendants requesting their paystub, yet Defendants willfully refused to provide the paystubs to the Plaintiffs. One such recording is recorded.

45.    Defendants' willful conduct in changing employees' hours and earned tips in the system, under the auspices of helping the employees to save in taxes, while instead attempting to avoid paying proper wages and overtime is evident from the following text message exchange: D. Collins "You have 51 hours this week. I'm going to put in 40 in for this week and then add the other 11 to next week if that's cool?"

….

D. Collins: You made $1,273 in cc tips . [sic]. I'll do $1,000 this week and add the 200 next so you dont [sic] get screwed in taxes.

46.    On numerous occasions, PULLMAN was told by DEFENDANT D. COLLINS that she had "made too much money" that day and therefore would not be provided her tip credit and/or her full amount of wages or tip so that she would not receive the total amount owed to her.

9

47.     MILANESE asked D. COLLINS multiple times if she would be able to view her paystubs as she would be working for weeks without receiving a paycheck. Only after threatening to call the payroll company, would D. COLLINS allow her access to same. Thereafter, in viewing the checks, all stated that she had made no money for those payroll periods incorrectly.

48.     During a staff meeting, PULLMAN complained to D. COLLINS about not being paid correctly. In response, D. COLLINS stated "you guys all make enough $$ here so I don't wanna hear it, you should be happy".

49.     Numerous times, MILANESE text messaged D. COLLINS about overages in the register that should have been paid out as tips. D. COLLINS instructed MILANESE to leave the money in the register. Upon information and belief, Defendants kept these monies for themselves and it was not paid to the employees as required.

50.     Upon information and belief, documentary evidence demonstrates that the tips, hours, and wage amounts, placed in the ADP system did not always match the receipts provided to each server. Therefore, upon information and belief, Defendants willfully, or with reckless disregard, input the incorrect information into the ADP system to alter the Plaintiffs' time, tips received, and other relevant information required to accurately pay them.

51.     Named Plaintiffs would frequently complain to Defendants about not receiving overtime and the wages and tips owed to them. In response, D. COLLINS would sometimes put cash in an envelope and leave it on the bulletin board for purported overtime if they complained. She did this inconsistently and the amounts within the envelope were arbitrary and did not align with the hours that the Plaintiffs had actually worked.

52.     Moreover, as discussed further herein, when MILANESE complained to Defendants regarding their violations of New York State and Federal Law, she was terminated from her employment.

<u>Alexandra Pullman</u>

53.     Named Plaintiff, PULLMAN, was employed by Defendants as a bartender and server as a non-exempt, hourly employee.

54.     PULLMAN worked more than forty hours a week. PULLMAN was not paid overtime or spread of hours pay in violation of New York State Labor law and the FLSA.

55.     PULLMAN also frequently worked more than ten hours in one day. Defendants would frequently edit her time to make it appear as if she had not worked more than ten hours in one day and/or forty hours in one week. Moreover, Defendants never paid PULLMAN spread-of-hours pay.

56.     In addition, from the time that she was hired until she was terminated, PULLMAN was not permitted to take a lunch break.  PULLMAN was also required to work and train new employees without pay, as well as work in the kitchen. Eventually, PULLMAN was forced to resign from her position with Defendants due to their numerous violations of New York State and federal law.

57.     Furthermore, during the course of Plaintiff PULLMAN's employment with Defendants, Plaintiff was subject to pregnancy discrimination. During the course of Plaintiff's employment with Defendant, Plaintiff was pregnant. PULLMAN'S son was born in August 2021. PULLMAN stopped working in July 2021. She was forced to return to work only a month and a half after his birth because she could not continue to be out of work and not paid.

58. Defendants never provided Plaintiff with written notice of the right to be free from discrimination in relation to pregnancy.

59. Moreover, Defendants never informed Plaintiff PULLMAN that she was entitled to New York Paid Family Leave, despite inquiry; moreover, PULLMAN was not paid during the time that she was out of work after giving birth to her child despite the fact that upon information and belief, funds were deducted from her pay for New York Paid Family Leave.

60. Plaintiff did inform Defendants that she was pregnant in a timely manner.

61. As a result of the foregoing, Plaintiff has suffered damages including, but not limited to, loss of employment, loss of wages, mental pain and anguish, and other damages, including statutory damages, as prescribed by law.

62. Defendant's conduct is in violation of New York Law, including, but not limited to, the New York Executive Law §§ 296 et seq.

<u>Jaclyn Knanishu</u>

63. KNANISHU often worked over forty hours per week and sometimes ten hours or more in one day but was not paid overtime or spread of hours pay.

64. Moreover, KNANISHU was not paid the accurate amount or number of tips owed to her as detailed previously herein.

65. In addition, KNANISHU was not paid for hours wherein she was to train other employees and was made to work those hours without pay. KNANISHU was also not provided with meal or rest breaks as required by law.

<u>Arianna Milanese</u>

66.     MILANESE frequently worked over 8 hours each shift from approximately 11:00 AM to 12:00 AM or later. Moreover, MILANESE was required to work numerous hours to train new employees without pay and was not permitted to keep tips earned during that period.

67.     Defendants refused to pay MILANESE overtime or spread of hours pay during her employment.   When MILANESE complained to Defendants regarding same, Defendants, in retaliation, terminated her for that reason, as well as because she complained about wage and hour violations.

68.     Moreover, MILANESE did not receive meal or rest breaks during her employment.

69.     Moreover, MILANESE was not paid the accurate amount or number of tips owed to her as detailed previously herein.

70.     For example, on March 17 2017, MILANESE worked a shift that was over 15 hours and was not paid the proper amount; when she complained about the underpayment, she was told that she had made enough money and the underpayment did not need to be corrected.

71.     Furthermore, during the course of Plaintiff MILANESE's employment with Defendants, Plaintiff was subject to pregnancy discrimination.

72.     Defendants never provided Plaintiff with written notice of the right to be free from discrimination in relation to pregnancy.

73.     MILANESE had a child in March 2021, November 2017, and April 2019. Defendants never informed Plaintiff MILANESE, that she was entitled to New York Paid Family Leave, despite inquiry. MILANESE was not paid during the time that she was out of work after giving birth to her child despite the fact that upon information and belief, funds were deducted from her pay allegedly for New York Paid Family Leave.

74.     During the course of Plaintiff's employment with Defendant, Plaintiff was pregnant.

75.     Plaintiff did inform her direct supervisor that she was pregnant in a timely manner.

76.     Six months after being back to work after her pregnancy, Plaintiff was terminated by Defendant. The reason given to Plaintiff by Defendant was that they wanted to terminate her when she was pregnant and unable to come into work, but could not. That was after she had also complained of pay violations as plead above.

77.     Defendant did not have a legitimate reason for terminating Plaintiff.

78.     As a result of the foregoing, Plaintiff has suffered damages including, but not limited to, loss of employment, loss of wages, mental pain and anguish, and other damages, including statutory damages, as prescribed by law.

<u>COLLECTIVE-WIDE FACTUAL ALLEGATIONS</u>

79.     Upon information and belief, in 2017, 2018, 2019, 2020, 2021, and 2022, numerous employees complained to Defendants about not being paid overtime when they would work over forty hours.  However, Defendant COLLINS would retort "you made too much money today" and threaten their employment.

80.     Upon information and belief, named Plaintiffs and the Collective were assigned tasks outside of tipped work, but were not provided proper renumeration for same such as organizing and cleaning the kitchen, as well as preparing meals for customers.

81.     Named Plaintiffs put Defendants on notice about the unlawful conduct when they complained to Defendants numerous times. In response to their complaints about the unpaid wages, Defendants violated NYLL § 215 by retaliating against them by reducing their hours, withholding tips and wages, among other things. As discussed previously herein case, Defendants ultimately terminated her employment under pre-text for complaining regarding same.

82.    On information and belief, Defendants willfully paid Named Plaintiffs and the other members of the putative class less than the rates of wages and benefits to which Named Plaintiffs and the other members of the putative class were entitled.

83.    Upon information and belief, from approximately 2017 to April 2022, Defendant D. COLLINS would frequently sign into her employees' time keeping system and make "corrections" on her own under the auspices of attempting to save them tax consequences of proper reporting of their hours. In essence, she in fact was altering their hours to ensure that they did not need to be paid overtime and/or additional wages. Upon information and belief, she continued to do same up to at least April 2022.  These corrections would be to shorten any employees' time that went over 40 hours per week to avoid having to pay any employees' overtime and additional wages.

84.    Only if an employee was to complain would Defendant COLLINS state that she would "make an exception" and pay the employee overtime.

85.    Most employees for Defendants consistently work more than 40 hours per week and/or more than ten hours per day without being paid overtime and without meal or rest breaks.

86.    Named Plaintiffs and upon information and belief, members of the putative class, were required to sometimes work more than ten hours in a given day and their hours and days, including the amount of same, could vary.  Furthermore, Named Plaintiffs often worked more than forty (40) hours in a given work week.

87.    Named Plaintiffs, and upon information and belief, members of the putative class did not always receive accurate paystub and/or other notice of their hours and the amount of their wages from Defendants as required under Federal and State Law.

88.    Upon information and belief, upon learning that the Class had formed, Defendants altered and changed the prior schedules of the Class Members and the ADP reporting system to make it appear as if the Class Members had not worked over 40 hours in a week without payment on or around April 2022, as well as had their accountant prepare tax documents to demonstrate proper payments.

89.    The hours reflected on Named Plaintiffs' paystubs which they did receive did not accurately reflect the hours worked by Named Plaintiffs.

90.    Named Plaintiffs and, upon information and belief, the putative class did not receive the amount of wages equal to their regular hourly rate.

91.    Moreover, Named Plaintiffs and those similarly situated often worked more than ten (10) hours in a given day, but did not receive spread of hours pay in violation of New York State and Federal law.

92.    Furthermore, upon information and belief, Defendants maintained a policy and practice of failing to keep accurate records with respect to the time worked by its employees, including, but not limited to W-2 forms, paystubs, and other documentation.

93.    Furthermore, upon information and belief, Defendants were aware that it did not keep accurate records of hours worked by the Named Plaintiffs, the putative class members, and their rates of pay.

94.    That is, Plaintiffs' hours, and upon information and belief, the putative class members' hours, were not accurately and consistently recorded on pay stubs or W-2s.

95.    Moreover, throughout their employment with Defendants, Plaintiffs and the members of the putative class consistently worked more than 40 hours per week.

96.    Upon information and belief, Defendants maintained a policy and practice of shortening the hours worked by Named Plaintiffs and members of the putative class.

97.    Upon information and belief, when Named Plaintiffs and members of the putative class worked over 40 hours in a week, they often did not receive any wages at all, including overtime compensation, at the rate of one and one half (1 ½) times the regular rate of pay.

98.    Moreover, Defendants were aware that Plaintiffs and the members of the putative class worked more than 40 hours per workweek, yet Defendants failed to pay them any overtime compensation for all of the hours worked over 40 in a workweek.

99.    Named Plaintiffs and the putative class members' primary duties would vary, but were not management.

100.    Named Plaintiffs and the putative class members' primary duties included non-exempt duties including taking phone calls, bartending, serving food, cleaning, and cooking.

101.    Named Plaintiffs and the putative class members spent the vast majority of their time performing these non-exempt duties.

102.    Named Plaintiffs and the putative class members did not exercise a meaningful degree of independent discretion with respect to the exercise of their duties and were required to follow the policies, practices and procedures set by Defendants.  Named Plaintiffs and the putative class members did not have any independent discretionary authority to deviate from these policies, practices, and procedures.

103.    Named Plaintiffs and the putative class members did not have authority (a) to create or implement management policies, practices, and procedures for Defendants; (b) to commit Defendants in matters having significant financial impact; (c) to set employees' wages; (d) to

determine how many labor hours could be allocated to their branch; or (e) to hire, fire, or promote employees.

104.     The Named Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

105.     Named Plaintiffs and the putative class members ("Plaintiffs") bring the First Cause of Action, pursuant to FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated persons who performed work for Defendants and who elect to opt-in to this action (the "FLSA Collective").

106.     All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

107.     Defendants have willfully engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

    a.  failing to pay Plaintiffs and the members of the FLSA Collective overtime wages for hours that they worked in excess of 40 hours per workweek;
    b.  misclassifying Plaintiffs and the members of the FLSA Collective as exempt from the protections of the FLSA; and
    c.  failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective, have worked for the benefit of Defendants.

108.     Defendants are aware or should have been aware that federal law required them to pay employees, including Plaintiffs, putative class members, and members of the FLSA Collective, an overtime premium for hours worked in excess of 40 per workweek, as well as their wages as noticed.

109.     Plaintiffs and the FLSA Collective have all performed the same primary duty. Defendants' unlawful conduct has been willful, widespread, repeated and consistent.

<u>NEW YORK CLASS ACTION ALLEGATIONS</u>

110.    Plaintiffs also bring the remaining Causes of Action, the NYLL claims, under Article 9 of the New York Civil Practice Law and Rules on behalf of themselves and all employees who have worked at for Defendants in New York State between November 5, 2012 and the date of final judgment in this matter (the "New York Class Period") (the "New York Class").

111.    Excluded from the New York Class are Defendants' legal representatives, officers, directors, assigns and successors, or any individual who has, or who at any time during the New York Class Period has had, a controlling interest in Defendants; the Judges to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the New York Class.

112.    The members of the New York Class are so numerous that joinder of all members is impracticable.

113.    Common questions of law and fact exist as to the New York Class that predominate over any questions only affecting them individually and include, but are not limited to, the following: whether Defendants failed to compensate the Named Plaintiffs and the New York Class for hours worked in excess of 40 hours per workweek, as well as their hourly wage; whether Defendants failed to keep true and accurate time and pay records for all hours worked by the Named Plaintiffs and the New York Class, and other records required by the NYLL; whether Defendants failed to pay its employees spread-of-hours pay and maintained a policy whereby it would withhold such pay; whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and the proper measure of damages sustained by members of the New York Class.

114.    The claims of the Named Plaintiffs are typical of the claims of the New York Class they seek to represent.

115.    The Named Plaintiffs and members of the New York Class enjoy the same statutory rights under the NYLL to be paid overtime wages and statutory damages.

116.    The Named Plaintiffs and members of the New York Class have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

117.    The Named Plaintiffs and the members of the New York Class have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices and patterns of conduct.

118.    The Named Plaintiffs will fairly and adequately represent and protect the interests of the members of the New York Class.

119.    The Named Plaintiffs understand that as class representative, they assume fiduciary responsibilities to the class to represent its interests fairly and adequately.

120.    The Named Plaintiffs recognize that as class representative, they must represent and consider the interests of the class just as they would represent and consider their own interests.

121.    The Named Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor his own interests over the interests of the class.

122.    The Named Plaintiffs recognizes that any resolution of a class action must be in the best interest of the class.

123.    The Named Plaintiffs understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and/or trial.

124.    The Named Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation.  There is no conflict between the Named Plaintiffs and the New York Class members.  All Class Members have signed conflict waivers if necessary.

125.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

126.    The members of the New York Class have been damaged and are entitled to recovery as a result of Defendants' violation of the NYLL as well as its common and uniform policies, practices, and procedures.

127.    Although the relative damages suffered by individual members of the New York Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.

128.    Plaintiffs lack the financial resources to conduct a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.

129.    In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

130.    This action is properly maintainable as a class action under Article 9 of the New York Civil Practice Law and Rules.

<u>FIRST CAUSE OF ACTION</u>

<u>Fair Labor Standards Act – Overtime Wages (Brought on behalf of Plaintiffs and the FLSA Collective)</u>

131.    Named Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

132.   Defendants have engaged in a widespread pattern and practice of violating the FLSA, as described in this Complaint.

133.   Named Plaintiffs have consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

134.   At all relevant times, Named Plaintiffs and other similarly situated current and former employees were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

135.   The overtime wage provisions set forth in §§ 201 et seq. of the FLSA apply to Defendants.

136.   Defendants are an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

137.   At all times relevant, Named Plaintiffs and the putative class were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

138.   Defendants have failed to pay Named Plaintiffs and other similarly situated current and former employees the overtime wages to which they were entitled under the FLSA.

139.   Defendants' violations of the FLSA, as described in this Complaint, have been willful and intentional.

140.   Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and other similarly situated current and former employees.

141.   Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, per 29 U.S.C. § 255.

142.    As a result of Defendants' willful violations of the FLSA, Named Plaintiffs and all other similarly situated employees have suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201 et seq. 128.

143.    As a result of the unlawful acts of Defendants, Named Plaintiffs and other similarly situated current and former employees have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

<u>SECOND CAUSE OF ACTION</u>

<u>New York Labor Law – Unpaid Overtime (Brought on behalf of the Named Plaintiffs and the New York Class)</u>

144.    Plaintiffs, on behalf of themselves and the New York Class Members, reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

145.    Pursuant to New York Labor Law, workers, such as the Named Plaintiffs and other members of the putative class ("the New York Class"), are protected from wage underpayments and improper employment practices. 12 NYCRR § 142-2.2 requires that "[a]n employer shall pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate."  New York Labor Law § 663, provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorneys' fees."

146.    Pursuant to NYLL § 651, the term "employee" means "any individual employed or permitted to work by an employer in any occupation."  As persons employed for hire by Defendants, the Named Plaintiffs and other members of the putative class are "employees," as understood in NYLL § 651 and case law interpreting the same.

147.    Defendants are an "employer" within the meaning of NYLL § 651.

148.    The Named Plaintiffs and other members of the putative class worked more than forty hours per week while working for Defendants. Upon information and belief, the Named Plaintiffs and other members of the putative class did not receive the New York statutory overtime compensation for all hours worked after the first forty hours of work in a week. Consequently, by failing to pay the Named Plaintiffs and other members of the putative class overtime compensation, Defendants violated New York Labor Law § 663; New York Labor Law §§ 190 et seq.; and 12 NYCRR § 142-2.2.

149.    By the foregoing reasons, Defendants have violated New York Labor Law and are liable to Named Plaintiffs and members of the putative class for all damages allowable under the New York Labor Law and Article 9 of the CPLR in an amount to be determined at trial, plus interest, attorneys' fees, and costs, and such other and further damages permitted under the NYLL or CPLR.

<u>THIRD CLAIM FOR RELIEF</u>

<u>New York Labor Law Wages, including Overtime (Brought by Plaintiffs, Individually and on Behalf of the Class)</u>

150.    Plaintiffs, on behalf of themselves and the New York Class Members, reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

151.    It is unlawful under New York law for an employer to suffer or permit a nonexempt employee to work more than 40 hours in a workweek ("overtime hours") without paying the required overtime wages for the overtime hours worked, as well as failing to pay them their noticed hourly rate.

152.    Throughout the Class Period, Defendants willfully, regularly, repeatedly and knowingly violated the Plaintiffs' and the New York Class Members' rights by failing to pay them

compensation at the required overtime compensation at the required overtime rates, as well as their noticed hourly rate for all hours worked in violation of the NYLL and its regulations.

153.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and the New York Class Members have sustained damages, including loss of earnings, in an amount to be established at trial.

154.    Due to Defendants' NYLL violations, Plaintiffs, on behalf of themselves and the New York Class Members, seek damages in the amount of their respective unpaid wages, including overtime compensation, prejudgment and post-judgment interest, and attorneys' fees and costs, pursuant to the NYLL, and such other legal and equitable relief as this Court deems just and proper.

<u>FOURTH CAUSE OF ACTION</u>
<u>New York Labor Law – Record Keeping Violations - (Brought on behalf of the Named Plaintiffs and the New York Class)</u>

155.    Plaintiffs, on behalf of themselves and the New York Class Members, reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

156.    Defendants have willfully failed to supply the Named Plaintiffs and the members of the New York Class notice as required by NYLL Article 6, § 195, in English or in the language identified by the New York Plaintiffs and the members of the New York Class as their primary language, containing the New York Plaintiffs' and the members of the New York Class' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the

physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

157.    Defendants have willfully failed to supply the New York Plaintiffs and the members of the New York Class with an accurate statement of wages as required by NYLL Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

158.    Due to Defendants' violations of the NYLL, the New York Plaintiffs and the members of the New York Class are entitled to recover from Defendants $100 for each workweek that the violations occurred or continue to occur, or a total of $2,500, as provided for by NYLL Article 6, § 198(1)-d, reasonable attorneys' fees, costs, injunctive and declaratory relief.

<u>FIFTH CLAIM FOR RELIEF</u>

<u>Unjust Enrichment (Brought by Plaintiffs Individually and on Behalf of the Class)</u>

159. Plaintiffs, on behalf of themselves and the New York Class Members, re-allege and incorporate by reference all previous paragraphs as if they were set forth again herein.

160.    Plaintiffs and the members of the Class provided services and/or work to Defendants for which Defendants understood that they were obligated to pay wages.

161.    Defendants did not pay wages for the services and/or work provided by Named Plaintiffs and putative class.

162.    Defendants were unjustly enriched at the expense of Named Plaintiffs and the putative class.

163.    Accordingly, Named Plaintiffs and the putative class are now entitled to recover damages, plus interest.

SIXTH CLAIM FOR RELIEF

New York Labor Law - Failure to Pay Spread of Hours Wages (Brought by Plaintiffs, Individually and on Behalf of the Class)

164.    Plaintiffs, on behalf of themselves and the New York Class Members, re-allege and incorporate by reference all previous paragraphs as if they were set forth again herein.

165.    Plaintiffs and the New York Class Members regularly ended their workday more than ten (10) hours after the beginning of their workday.

166.    Throughout the Class Period, Defendants willfully and intentionally failed to compensate Plaintiffs and the New York Class Members additional compensation of one hour's pay at the basic New York minimum hourly wage rate for each day that the interval between the beginning and end of their workday was greater than ten (10) hours, as required by the NYLL and implementing regulations.

167.    By virtue of Defendants' failure to pay Plaintiffs and the New York Class Members spread-of hours pay, Defendants have violated the NYLL and its regulations.

168.    As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Named Plaintiffs and the New York Class Members have sustained damages, including loss of earnings, in an amount to be established at trial.

169.    Due to Defendant's NYLL violations, Named Plaintiffs, on behalf of themselves and the New York Class Members, seek damages in the amount of their respective unpaid spread

of hours wages, prejudgment and post-judgment interest, attorneys' fees and costs, pursuant to the NYLL, and such other legal and equitable relief as this Court deems just and proper

<u>SEVENTH CLAIM FOR RELIEF</u>

<u>(Notice & Wage Statement Violations – NYLL §195, Brought by Plaintiffs Individually)</u>

170.    Named Plaintiffs, individually, and on behalf of the putative class, reallege and incorporate by reference all allegations in all preceding paragraphs as if they were set forth again herein.

171.    Defendants have willfully failed to supply Named Plaintiffs and the putative class with the notice required by NYLL § 195(1), containing their "rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary."

172.    Defendants have willfully failed to supply Plaintiffs and the putative class members with an accurate statement of wages as required by NYLL § 195(3), containing the "dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

173.     Due to Defendants' violations of the NYLL§ 195(1), Plaintiffs and the putative class are entitled to $50 dollars for each workday in which the violations occurred up to $5,000, as provided for by NYLL § 198(1)-b, as well as reasonable attorneys' fees, costs, injunctive and declaratory relief.

174.     Due to Defendants' violations of the NYLL § 195(3), Plaintiffs and the putative class are entitled to recover from Defendants $250 for each workday on or after April 9, 2011, on which the violations occurred or continue to occur, or a total of $5,000, as provided for by NYLL § 198(1)-d.

<u>AS AND FOR AN EIGHTH CAUSE OF ACTION</u>

<u>For Pregnancy and Gender Discrimination</u>

175.     Plaintiffs alleges and re-alleges all of the other paragraphs contained herein.

176.     During the course of Plaintiff MILANESE's employment with Defendants, Plaintiff was subject to pregnancy discrimination.

177.     Defendants never provided Plaintiff with written notice of the right to be free from discrimination in relation to pregnancy.

178.     Moreover, Defendants never informed Plaintiff MILANESE, that she was entitled to New York Paid Family Leave, pursuant to N.Y. Workers' Comp. Law § 204(2)(a), despite inquiry. MILANESE was not paid during the time that she was out of work after giving birth to her child. MILANESE was not paid during the time that she was out of work after giving birth to her child despite the fact that upon information and belief, funds were deducted from her pay allegedly for New York Paid Family Leave.

179.     During the course of Plaintiff's employment with Defendant, Plaintiff was pregnant.

180.     Plaintiff did inform her direct supervisor that she was pregnant in a timely manner.

181.    Nine months after her pregnancy, Plaintiff was terminated by Defendant. The reason given to Plaintiff by Defendant was that they wanted to terminate her when she was pregnant and unable to come into work, but could not. That was after she had also complained of pay violations as plead above.

182.    Defendant did not have a legitimate reason for terminating Plaintiff.

183.    Defendants' termination of Plaintiff was in violation of the NYSHRL and was retaliatory under the law.

184.    As a result of the foregoing, Plaintiff has suffered damages including, but not limited to, loss of employment, loss of wages, mental pain and anguish, and other damages, including statutory damages, as prescribed by law.

185.    Defendant's conduct is in violation of New York Law, including, but not limited to, the New York Executive Law §§ 296 et seq.

## AS AND FOR A NINTH CAUSE OF ACTION

### For Pregnancy and Gender Discrimination

186.    Plaintiffs allege and re-allege all of the other paragraphs contained herein.

187.    During the course of Plaintiff PULLMAN's employment with Defendants, Plaintiff was subject to pregnancy discrimination.

188.    During the course of Plaintiff's employment with Defendant, Plaintiff was pregnant.

189.    Defendants never provided Plaintiff with written notice of the right to be free from discrimination in relation to pregnancy.

190.    Moreover, Defendants never informed Plaintiff PULLMAN that she was entitled to New York Paid Family Leave, despite inquiry; moreover, PULLMAN was not paid during the

time that she was out of work after giving birth to her child despite the fact that upon information and belief, funds were deducted from her pay for New York Paid Family Leave.

191.    Plaintiff did inform Defendants that she was pregnant in a timely manner.

192.    As a result of the foregoing, Plaintiff has suffered damages including, but not limited to, loss of employment, loss of wages, mental pain and anguish, and other damages, including statutory damages, as prescribed by law.

193.    Defendant's conduct is in violation of New York Law, including, but not limited to, the New York Executive Law §§ 296 et seq.

## AS AND FOR TENTH CAUSE OF ACTION

### Aiding and Abetting Violations

194.    Plaintiff hereby repeat and realleges each and every allegation in previously plead herein as if set fully herein.

195.    The Individual Defendants K. COLLINS and D. COLLINS knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, and, retaliation against Plaintiff PULLMAN and MILANESE in violation of the New York Human Rights Law.

196.    That the foregoing acts pleaded above were aided and abetted by, and with the full knowledge and consent of, Defendants K. COLLINS and D. COLLINS in violation of the New York Human Rights Law.

197.    As a direct and proximate result, Plaintiff PULLMAN and Plaintiff MILANESE have suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which they are entitled to an award of monetary damages and other relief.

198.    As a direct and proximate result, Plaintiffs have suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self- confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

199.    The Individual Defendants unlawful actions constitute malicious, willful and wanton violations of the New York Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated members of the putative class, including, but not limited to the FLSA Collective and the New York Class, respectfully requests that this Court grant the following relief:

a. Certification of this action as a class action and/or collective action pursuant to Article 9 of the CPLR and the FLSA on behalf of the members of the Class and appointing Plaintiffs and their counsel to represent the Class and/or collective;

b. An order tolling the statute of limitations;

c. An award of unpaid wages, spread of hours wages, overtime wages and minimum wages; and statutory and punitive damages due under the FLSA, New York Labor Law, New York State Human Rights Law, and New York common law;

d. An award of pre-judgment and post-judgment interest;

e. An award of costs and expenses of this action together with reasonable attorneys' fees; and

f. Such other and further relief as the Court deems just and necessary.

Dated:        Poughkeepsie, New York
              February 23, 2024

                            YOUNGWIRTH LAW PLLC

                            _____
                            Brooke D. Youngwirth, Esq. (BY1210)
                            *Attorneys for Plaintiffs*
                            63 Cannon Street – Suite B

Poughkeepsie, New York 12601
(845) 745-3019